IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────────

CMFG LIFE INSURANCE COMPANY,

                Plaintiff,                       OPINION & ORDER

    v.                                                        13-cv-576-wmc

UBS SECURITIES, LLC,

                Defendant.
───────────────────────────────────────────────────────────────

      CMFG Life Insurance Company ("CUNA Mutual") brought this lawsuit to rescind its purchase of a single, residential mortgage-backed security ("RMBS") from defendant UBS Securities, LLC ("UBS"). UBS responded with a motion to dismiss the rescission claim as untimely under Wisconsin's six-year statute of limitations for actions upon contract. *See* Wis. Stat. § 893.43. In reply, CUNA Mutual argues that this court should apply the six-year statute of limitations for actions grounded in fraud, which would give plaintiff the benefit of a discovery rule. *See* Wis. Stat. § 893.93(1)(b).

      On July 1, 2014, the court granted UBS's motion, holding first that CUNA Mutual had only sought rescission based on negligent or strict responsibility misrepresentation. The court further held that although Wisconsin case law surrounding the question was less than clear and even inconsistent, claims for relief "on the grounds of fraud" did not encompass claims for contractual rescission based on negligent or strict responsibility misrepresentations, but rather required allegations of *intentional* misrepresentation. (*See* July 1, 2014 Opinion & Order (dkt. #40) 2-12.) In so holding, the court rejected CUNA Mutual's attempt to pursue a so-called "miscellaneous" action that might benefit from the discovery rule as a "tort," while simultaneously evading the economic loss doctrine. (*Id.* at

11 n.11.) In a footnote, however, the court observed that perhaps CUNA Mutual could amend its complaint to allege claims for rescission on the grounds of intentional misrepresentation, since at least some case law supported the application of Wis. Stat. § 893.93(1)(b) -- and its corresponding discovery rule -- to such claims. (*Id.* at 12 n.13.) The court then entered judgment and closed this case. (Dkt. #41.)

Predictably enough, CUNA Mutual has since moved to alter or amend the judgment and seeks leave to amend its complaint to assert claims for rescission on the ground of intentional misrepresentation. (Dkt. #42.) "Leave to amend a complaint should 'be freely given when justice so requires.'" *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (quoting Fed. R. Civ. P. 15(a)). "Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Id.*; *see also Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("[W]hile a court may deny a motion for leave to file an amended complaint, such denials are disfavored."). For this reason, "[d]istrict courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend[.]" *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

Here, the court terminated the case the same day that it dismissed CUNA Mutual's complaint as time-barred, but failed to make any finding that amendment would be "futile or otherwise unwarranted." Since Seventh Circuit case law suggests that the court should instead have given CUNA Mutual an opportunity to cure the deficiencies under these circumstances, its failure to do so constitutes grounds for relief under Rule 59(e). *See Foster*,

2

545 F.3d at 584. Nevertheless, UBS opposes the motion, arguing that CUNA Mutual has not met its "heavy burden" under Rule 59(e) for a variety of reasons, each of which the court addresses below.

I. Right to Amend

Unlike the plaintiff who was denied an opportunity to amend as of right in *Foster*, USB initially asserts that CUNA Mutual *failed* to amend within 21 days of UBS's Rule 12(b)(6) motion, thereby waiving its right to amend without leave. Fed. R. Civ. P. 15(a)(1)(B).[1] The court is not, however, persuaded that this matters here. While CUNA Mutual did not amend within 21 days of receiving the motion to dismiss, it still *could* have amended, had the court not summarily entered judgment and closed the case, by availing itself of Rule 15(a)(2) and seeking the court's leave, which is to be given freely "when justice so requires."

Relying on the Seventh Circuit's decision in *Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014), UBS also argues that CUNA Mutual has already amended its complaint once. In *Adams*, the court held that the line of cases allowing one chance to replead did not apply where the plaintiff had *already* amended its complaint once before. *Id*. But CUNA Mutual's initial amendment was in response to an early order from this court, which directed CUNA Mutual to plead diversity jurisdiction properly. That amendment

---

[1] UBS has also moved for the court to take judicial notice of a slip opinion in another RMBS case in the Central District of California and the prospectus and prospectus supplement for the MASTR Alternative Trust 2006-2 at issue in this action. (Dkt. #50.) CUNA Mutual does not oppose the motion to the extent that the court takes judicial notice only of the fact that these publicly-available documents exist. (*See* dkt. #52.) The court agrees with CUNA Mutual that judicial notice of the truth of the facts asserted in those documents would be inappropriate at this stage, but will grant the motion to the extent of taking note of and considering the non-binding *RMBS* decision, and recognizing the existence of the other documents. *Cf. CMFG Life Ins. Co. v. RBS Secs. Inc.*, No. 12-cv-037-wmc, 2013 WL 4483068, at *1 & n.2 (W.D. Wis. Aug. 19, 2013).

had nothing to do with the merits of this case, and certainly not with the statute of limitations issues that ultimately resulted in dismissal. Indeed, the parties agreed that the *only* change effected by the previous amendment was to properly allege the citizenship of defendant UBS. (*See* Stipulation (dkt. #37).) It would be unjust to base a denial of relief purely on an amendment that was limited to the issue of diversity jurisdiction per court order.

Moreover, the plaintiffs in *Adams* had missed the court-imposed deadline to amend the pleadings. *Adams*, 742 F.3d at 734. In contrast, CUNA Mutual may have missed the January 31, 2014, deadline to amend its pleadings *without leave of court* (*see* Scheduling Order (dkt. #33) 1), but it did not miss a cutoff for amendments to the pleadings made *with leave*.[2] Finally, the *Adams* court separately determined that the proposed amendment would have been futile.

## II.   Timeliness

UBS next faults CUNA Mutual for its delay in bringing the motion to amend. According to UBS, CUNA Mutual could have -- and should have -- moved to amend as soon as it was alerted to the insufficiencies in its pleadings. While there is more merit to this argument, the court itself recognized that the law surrounding the asserted statute of limitations defense was tangled and difficult to parse. CUNA Mutual arguably lacked sufficient reason to believe that asserting a claim for contractual rescission based on intentional misrepresentation might cure the asserted deficiencies in its complaint *until* the

---

[2] This fact also undermines UBS's argument that CUNA Mutual must demonstrate "good cause" to modify the scheduling order under Rule 16(b)(4). A deadline for amendments *without* leave of court does not apply to amendments later made *with* the court's leave. *See Grand River Enters. Six Nations Ltd. v. VMR Prods. LLC*, No. 13-cv-104-wmc, 2014 WL 2434517, at *1 n.2 (W.D. Wis. May 29, 2014).

court's order on the motion to dismiss issued. This differentiates any delay on CUNA Mutual's part from that in *Alioto v. Town of Lisbon*, 651 F.3d 715 (7th Cir. 2011), where the complaint was deficient because it failed to state a claim -- meaning the allegedly unknown deficiency was a "matter[] of hornbook civil procedure law." *Id.* at 720. This case is also unlike *Wicke v. L & C Insulation, Inc.*, No. 12-cv-638-wmc, 2013 WL 5570323 (W.D. Wis. Oct. 9, 2013), where plaintiffs *twice* amended their complaint without curing a deficiency already identified by defendant. *Id*. at *2.

Ultimately, CUNA Mutual's delay appears to be more a function of the current state of the law, rather than a strategic choice to "hold back" its intentional misrepresentation claim, particularly since at least one case cited by UBS suggested that alleging a rescission claim based on intentional misrepresentations would *not* cure the deficiency. *See Kindschuh v. City of Fond du Lac*, No. 09-C-214, 2010 WL 1507883, at *5-6 (E.D. Wis. Apr. 14, 2010) (applying § 893.43). Accordingly, CUNA Mutual was entitled to attempt to cure the deficiency in its complaint, something the court's simultaneous dismissal of the complaint and entry of judgment prevented.

### III.   Futility

Finally, UBS argues that an amendment to add a claim for rescission would still be barred by the six year statute of limitation for breach of contract, including one grounded in intentional fraud. As support, UBS cites again to *Kindschuh,* as well as *Dairyland Power Cooperative v. Amax Inc.*, 700 F. Supp. 979 (W.D. Wis. 1986).

The latter case is inapposite. The *Dairyland* court applied the contract statute of limitations to a claim for rescission, but expressly noted that "[f]raud does not form the

5

gravamen of plaintiff's complaint. Instead, plaintiff's suggestion of fraud appears to be an afterthought motivated by the need to rescue its unconscionability claim." 700 F. Supp. at 992-93.

*Kindschuh* is more directly applicable, since it concerns the application of the contract statute of limitations to a claim for rescission grounded on intentional misrepresentations, 2010 WL 1507883, at *6, but as Judge Randa recognized in his decision in a parallel case, *CMFG Life Insurance Company v. Morgan Stanley & Co., LLC* (Notice of Supplemental Authority Ex. A (dkt. #53-1) 3), the *Kindschuh* decision at best raises an inconsistency in the way the law has been applied. Moreover, this court agrees with Judge Randa that § 893.93(1)(b) applies to intentional misrepresentation claims. Judge Randa's conclusion is consistent with *Owen v. Wangerin*, 985 F.2d 312 (7th Cir. 1993), which applied the fraud statute of limitations to "a claim that appears to have blended tort and contract by seeking both rescission and damages," and *Koehler v. Haechler*, 27 Wis. 2d 275, 276, 133 N.W.2d 730 (1965), which applied the fraud statute of limitations "to an action for contractual rescission where the plaintiff implicitly, if not explicitly, alleged intentional 'fraud.'"[3] (July 1, 2014 Opinion & Order (dkt. #40) 6.)

As Judge Randa recognized, the pursuit of rescission as a remedy "means that the claim doesn't run afoul of the economic loss doctrine." (Notice of Supplemental Authority

---

[3] UBS suggests that *Koehler* actually involved a *tort* claim, rather than a claim for rescission, although the case syllabus states that the plaintiff sought rescission and nothing in the remainder of the opinion raises any reason to doubt it. *See Koehler*, 27 Wis. 2d at 276. UBS also suggests that the parties did not dispute the applicable statute of limitations in *Koehler*, but the only case supporting *UBS*'s position, *Kindschuh*, likewise did not involve a dispute as to the applicable statute of limitations. UBS also argues that the Wisconsin Legislature would have expressly excluded rescission claims based on fraud in the text of § 893.43 if they wanted a different statute of limitations to apply, as was done for actions on consent decrees, but it would make little sense to expect cross-referencing to claims that would normally fall under a different statutes of limitations, as would intentional fraud.

6

Ex. A (dkt. #53-1) 3 (citing *Harley-Davidson Motor Co., Inc. v. Powersports Inc.*, 319 F.3d 973, 987 (7th Cir. 2003)).) And *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, 283 Wis. 2d 555, 699 N.W.2d 205, is not to the contrary. Even if *Kaloti* narrowed the fraud in the inducement exception to the economic loss doctrine further than *Harley-Davidson*, the economic loss doctrine still applies only to *tort* claims. "[I]ts purpose is to preserve the distinction between contract and tort by requiring transacting parties to pursue only their contractual remedies when asserting an economic loss claim." *Kaloti*, 2005 WI 111, ¶ 28. Here, CUNA Mutual has done exactly that: it seeks to pursue rescission, a *contractual* remedy, which is the outcome the economic loss doctrine is intended to encourage.

Finally, UBS contends that CUNA Mutual has not adequately pled scienter as required by Rule 9(b).[4] In particular, UBS contends that CUNA Mutual has failed to allege facts supporting UBS's intent to defraud with sufficient specificity. Rule 9(b)'s heightened pleading requirement "does not extend to 'states of mind' which 'may be pleaded generally'" under the text of the rule. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (citing *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990)). However, "the complaint must still afford a basis for believing that plaintiffs could prove scienter." *Id.* (quoting *Robin*, 915 F.2d at 1127) (internal quotation marks omitted).

---

[4] UBS does not otherwise contend that the proposed pleading of the "circumstances constituting fraud" -- that is, the "who, what, when, where, and how" -- are deficient, *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), except to assert in conclusory fashion that CUNA Mutual's proposed pleading fails to allege any material misrepresentations, but this single-paragraph is not adequately developed. UBS itself appears to recognize as much, stating that it will set forth this argument "more fully in a motion to dismiss, if necessary." (Br. Opp'n (dkt. #48) 24.) CUNA Mutual has accordingly declined to respond. (Br. Reply (dkt. #51) 13.) Except as to scienter, the court, therefore, defers any further discussion of the sufficiency of CUNA Mutual's claims unless properly raised in a later motion to dismiss.

CUNA Mutual's proposed amended complaint at least meets that standard. The complaint alleges that UBS conducted due diligence on originators of mortgage loans and re-underwrote a random, statistically significant portion of whole-loan pools to ensure compliance with underwriting standards. (2d Am. Compl. (dkt. #43-1) ¶ 162.) Per UBS's own policies, the proposed complaint further alleges that its due diligence should have verified that the loans were issued in compliance with underwriting guidelines, as well as its own documentation of the loans' characteristics. (*Id.* at ¶ 182.) The complaint also alleges that UBS hired and supervised Clayton Holdings LLC in re-underwriting a sample of loans to fulfill UBS's due diligence obligations. (*Id.* at ¶¶ 264-69.) Moreover, it alleges that UBS, not Clayton, made the decision to waive non-complying loans into a final loan pool. (*Id.* at ¶ 271.) Finally, it alleges that ultimately UBS not only waived in 33% of non-complying "Event 3"[5] loans identified by Clayton on its behalf during the time period at issue while declining to further assess the loan pools to identify and eliminate additional defective loans.[6] (*Id.* at ¶¶ 275, 277.)

CUNA Mutual has, therefore, alleged a connection between the Clayton report and the specific loans that UBS allegedly securitized and offered for sale despite knowing, or recklessly disregarding, the originators' non-compliance with underwriting standards. *Cf. Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012)

---

[5] "Event 3" loans are those that do not comply with underwriting standards and do not contain sufficient compensating factors to offset the overall risk.

[6] Here, unlike in some other cases, CUNA Mutual specifically alleges that Clayton graded 20% of the loans it reviewed *for UBS* during this time period as Event 3 loans, and that UBS waived in 33% of those specific loans. Thus, it is unlike cases such as *Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 547 (S.D. Fla. 2013), where the plaintiff alleged only that Clayton had disclosed to the FDIC that investment banks *in general* waived in about 39% of non-complying mortgage loans. *See also Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681 (2d Cir. 2012*)* (only due diligence report identified in complaint originated *after* issuance of challenged notes).

(dismissing claims in part because plaintiff did not "link its already-too-general allegations to the loans underlying the certificates"). With respect to CUNA Mutual's allegations of misrepresented LTV ratios, the proposed amended complaint similarly alleges that UBS "used AVMs during the due-diligence process." (2d Am. Compl. (dkt. #43-1) ¶ 218.) The complaint also alleges that the use of AVMs reveals significant disparities between the percentage of loans with high LTV ratios advertised in UBS's offering documents and the actual percentage of loans with high LTV ratios. (*Id.* at ¶¶ 210-18.) Taken as a whole, this is sufficient to afford a basis to believe that CUNA Mutual could prove UBS knew its representations were false (or, alternatively, recklessly disregarded that possibility).[7]

IV.  **Unjust Enrichment**

UBS has better success with its argument that CUNA Mutual's unjust enrichment claim ought not to subject to further amendment. This court previously decided that claims for unjust enrichment were governed by, and were untimely under, the six-year contract statute of limitations. In response, CUNA Mutual contends that because those claims are premised upon the same misrepresentations, they should likewise benefit from the discovery rule. In light of precedent applying the six-year contract statute of limitations to such quasi-contract claims, this court disagrees. *See Servicios Especiales Al Comercio Exterior v. Johnson Controls, Inc.* No. 08-CV-1117, 2011 WL 1304922, at *2 (E.D. Wis. Apr. 1, 2011); *Boldt v. State*, 101 Wis. 2d 566, 578, 305 N.W.2d 133 (1981); *Stapel v. Stapel*, No. 2009AP1195, 2010 WI App 120, 329 Wis. 2d 269, 789 N.W.2d 753 (per curiam) ("Recovery based on unjust enrichment is sometimes referred to as a quasi-contract. As a claim based on

---

[7] Whether CUNA Mutual has adequately alleged scienter with respect to the falseness of owner-occupancy statistics is less clear, but given the brevity of the parties' arguments on that subject, the court will defer deciding that issue for now.

quasicontract, a claim for unjust enrichment is subject to the six-year statute of limitations set forth in Wis. Stat. § 893.43."). The court also notes that CUNA Mutual failed to address *Boldt* or *Stapel* at all in opposing the previous motion to dismiss, instead relying entirely on its implicit argument that the fraud statute of limitations applied indiscriminately to *all* its claims.

On the latter point, the court continues to find unpersuasive CUNA Mutual's argument that the fraud statute of limitations applies to the *entire action* merely because some asserted claims turn on allegations of fraud. As UBS points out, courts routinely apply different statutes of limitations to different claims within the same action. Furthermore, the elements of an unjust enrichment cause of action under Wisconsin law are: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value." *Puttkammer v. Minth*, 83 Wis. 2d 686, 689, 266 N.W.2d 361 (1978). Fraud is not a necessary component of such a claim, and CUNA Mutual's attempt to base its unjust enrichment claims on intentional misrepresentations reads more like an endeavor to save an untimely claim. *Cf. Dairyland*, 700 F. Supp. at 992-93. Finally, CUNA Mutual cites *no* case law in support of its approach -- neither a case applying § 893.93(1)(b) to an unjust enrichment claim, nor a case applying § 893.93(1)(b) to an entire *action* despite the nature of individual claims. In light of the foregoing, the court adheres to its earlier conclusion and will deny the motion to amend with respect to the claims for unjust enrichment.

V.     **Motion for Stay**

Also pending is a motion by CUNA Mutual to stay this action pending resolution of an appeal in a related case *CMFG Life Insurance Company v. RBS Securities*, No. 12-cv-037-wmc.  When deciding whether to stay an action, the court must "balance interests favoring a stay against interests frustrated by the action in light of the court's strict duty to exercise jurisdiction in a timely manner."  *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (quoting *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (internal quotation marks omitted)).  In conducting this balancing test, courts frequently consider:  (1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the court.

As CUNA Mutual contends, the eventual decision in the *RBS Securities* appeal may well provide helpful guidance with respect to CUNA Mutual's claims for rescission in this action, which closely mirror those asserted in *RBS Securities*.  But the court is not persuaded that a stay is necessary at this stage of the litigation.  As an initial matter, the issues on appeal to the Seventh Circuit in *RBS Securities* are not likely to be dispositive of the issues in this case at present.  Indeed, CUNA Mutual does not even argue this.  Furthermore, the court will need to set a new schedule in this matter, giving the parties sufficient time for discovery and dispositive motions, if any.  In any event, given the early stage of this litigation, by the time many of the overlapping issues arise in this matter, the *RBS Securities* decision will have already been issued.  Therefore, delaying decisions on the presently

pending motions would serve little purpose, while entirely preventing this matter from progressing toward trial.

The court would certainly be willing to reconsider CUNA Mutual's request for a stay if: (1) an immediate issue arises that could be directly affected by the *RBS Securities* decision; (2) that decision has not yet issued; and (3) that would likely streamline the issues and reduce the burdens of litigation on the parties and court. Under those circumstances, it may make sense to wait for the benefit of the Seventh Circuit's direction. At present, however, CUNA Mutual has not demonstrated that a stay is warranted. Accordingly, the court will deny the motion, reopen this case and set it for a preliminary pretrial conference to establish a new schedule.

## ORDER

IT IS ORDERED that:

1) Plaintiff CMFG Life Insurance Company's motion to alter or amend and for leave to amend the complaint (dkt. #42) is GRANTED.

2) Defendant UBS Securities, LLC's motion for judicial notice (dkt. #50) is GRANTED.

3) Plaintiff's motion to stay (dkt. #55) is DENIED.

4) A preliminary pretrial conference will be set to establish a new schedule in this matter.

Entered this 5th day of August, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge